THE MAYOR AND ALDERMEN OF SAVANNAH *v.* MULLIGAN.

1. The municipal authorities of a city have no right to destroy the private property of a citizen for the public good without compensating him for the loss thus occasioned, unless the property itself is a nuisance endangering the public health or safety. In that event it may be destroyed by such municipal authorities, without paying the owner its value, if the charter of the city confers upon them the power to abate such nuisances; but even then, unless the property is first condemned as a nuisance by appropriate proceedings, its destruction will be at the peril of the municipal authorities, and when sued for its value, the burden is on them of showing that it was in fact a nuisance, and that its destruction was really necessary to the public health or safety. In cases of emergency, the destruction may properly be ordered without a preliminary condemnation, but the municipal authorities will in that event carry the same burden.
2. In the present case the evidence showed conclusively and beyond question that the property destroyed was in fact a nuisance endangering the public health, and that the mayor and aldermen of Savannah had due authority to abate it. Consequently the destruction of the property was lawful, and the owner was not en-entitled to recover its value from the city.

January 28, 1895.

*Certiorari.* Before Judge FALLIGANT. Chatham superior court. June term, 1894.

SAMUEL B. ADAMS, for plaintiff in error.
GIGNILLIAT & STUBBS, *contra.*

SIMMONS, Chief Justice.

This was an action against the municipal corporation of the city of Savannah for the value of a feather-bed, pillows and mattress destroyed by a sanitary inspector of that city, under orders of its health officer. On *certiorari* the superior court ruled that the city was liable to the plaintiff under section 2226 of the code; and to this ruling the city excepted. The section referred to is as follows: "Analogous to the right of eminent domain is the power from necessity vested in corporate authorities of cities, towns and counties, to interfere with

and sometimes destroy the private property of the citizen for the public good, such as the destruction of houses to prevent the extension of a conflagration, or the taking possession of buildings to prevent the spreading of contagious diseases. In all such cases, any damages accruing to the owner from such acts, and which would not otherwise have been sustained, must be paid by such corporation."

We do not think the section above quoted is applicable to this case. Under the ruling of this court in *Dunbar* v. *City Council of Augusta*, 90 *Ga.* 390, a city having the power, under its charter, to abate nuisances endangering the public health and safety, may destroy property without making compensation to the owner, where the property constitutes a nuisance of that kind; and we think the decision in that case controls the present case. There the city authorities destroyed grain which had become wet and damaged by a flood while stored in the plaintiffs' warehouse; the plaintiffs sued the city for the value of the grain, and it was held by this court that "It not being alleged in the declaration that the damaged grain condemned and destroyed by the municipal authorities . . . was not a nuisance or was not dangerous to the public health, that being the ground on which it was condemned and destroyed, no cause of action against the municipality was set out in the declaration." BLECKLEY, C. J., in delivering the opinion of the court, said: "To destroy property because it is a dangerous nuisance is not to appropriate it to a public use, but to prevent any use of it by the owner and put an end to its existence because it could not be used consistently with the maxim, *sic utere tuo ut alienum non lædas.*" Section 2226 of the code, *supra*, though not referred to in the opinion, was cited and relied on by counsel for the plaintiff in error in that case, and was not overlooked by the court in the consideration of the

case. An illustration of the class of cases to which this section applies will be found in the case of *Dawson* v. *Kuttner*, 48 *Ga.* 133, the only case we know of in which the section referred to has been construed. In that case the plaintiff was held entitled to recover from the municipal corporation for property destroyed by the authorities thereof in attempting to prevent the spread of a fire; but the fire did not originate in, and had not extended to, the property in question at the time of its destruction.

In cases of emergency, the municipal authorities, if authorized by their charter to abate nuisances, are not bound, before ordering the destruction of property as a nuisance, to wait until the fact that the property is a nuisance is judicially determined. In such cases the destruction may be ordered without a preliminary condemnation. See *Mayor etc. of Americus* v. *Mitchell*, 79 *Ga.* 807; *Dunbar* v. *City Council*, *supra*, and cases cited. Unless, however, the property is first condemned as a nuisance by appropriate proceedings, its destruction will be at the peril of the municipal authorities, and when sued for its value, the burden is upon them of showing that it was in fact a nuisance, and that its destruction was really necessary to the public health and safety.

In the present case the evidence showed conclusively and beyond question that the property destroyed was in fact a nuisance endangering the public health, having been used as bedding by a person who had scarlet fever, a highly contagious disease; and the mayor and aldermen of the city, under its charter, had ample authority to abate the nuisance. (Code, §4875.) Consequently the destruction of the property was lawful, and the owner was not entitled to recover its value from the city.

*Judgment reversed.*