### REAGAN v. CITY OF TEXARKANA.*
(No. 2485.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 16, 1922. Rehearing Denied March 3, 1922.)

**1. Municipal corporations ⬯623(1)—Power to abate nuisance held not to give city power to judicially determine what is a nuisance.**

The grant of power in a city charter to declare dilapidated buildings nuisances and to direct them to be repaired, removed, or abated does not carry with it power to judicially determine whether the thing complained of is a nuisance.

**2. Nuisance ⬯83—Person destroying property as a nuisance without judicial determination acts at his peril.**

An individual, municipal corporation, or public officer destroying property as a nuisance proceeds at his peril unless the thing destroyed has first been judicially condemned as a nuisance.

**3. Constitutional law ⬯79—Determination by city council of existence of nuisance held not "due process of law."**

Determination by a city council that a building is a nuisance, though upon notice and opportunity to defend, is not "due process" within Const. art. 1, § 19, as the city council cannot exercise judicial functions, in view of Const. art. 5, § 1, giving to the Legislature the exclusive power to establish judicial tribunals in addition to those provided by the Constitution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

**4. Constitutional law ⬯318—City charter held not to give city council judicial power to declare and abate nuisances, so as to constitute "due process of law."**

A charter granting to a city council power to declare dilapidated buildings to be nuisances and to direct the same to be repaired, removed, or abated, as council shall prescribe, was the grant of a legislative and ministerial power for the protection of the public health and safety, and not a judicial power to declare and•abate nuisances, so that exercise of such power as a judicial function was not due process of law.

**5. Municipal corporations ⬯623(1), 742(6) —Judgment of city council as to nuisance held not conclusive in an action for damages.**

In an action for damages for the destruction of a building, a determination by a city council that the building was a nuisance was not conclusive upon the issue of nuisance, and that question and the value of the property remaining after the building had been destroyed were questions of fact for the jury.

Appeal from District Court, Bowie County; Hugh Carney, Judge.

Action by Mrs. Nellie Reagan against the City of Texarkana, Tex. From judgment for plaintiff for less than she claimed, plaintiff appeals. Reversed and remanded.

Chas. S. Todd and T. N. Graham, both of Texarkana, and W. T. Williams, of Austin, for appellant.

W. V. Brown and Keeney & Dalby, all of Texarkana, for appellee.

HODGES, J. [1] In February, 1921, the appellant filed this suit in the district court of Bowie county, alleging, in substance, as follows: That prior to April 20, 1919, she was the owner of a certain one-story frame building equipped with various conveniences, situated on one of the principal streets in the city of Texarkana, Tex.; that on or about the date above mentioned, during her absence and while the premises above referred to were temporarily vacant, the building was, without her consent, demolished, removed, and sold, to her damage in the sum of $5,000.

The city of Texarkana answered, admitting the destruction of the building, but denied the value to be as alleged by the plaintiff. The answer justified the removal of the building upon the ground that it was a public nuisance and had been so declared by the city council in a proceeding conforming to the provisions of an ordinance theretofore adopted.

In a trial before a jury the court submitted only one issue, the value of the building removed, which the jury placed at $350. That verdict was received, and the jury discharged; but, after further consideration, the finding of the jury was disregarded by the court, and a judgment was rendered in favor of the plaintiff for the sum of $100. It appeared from the pleadings and proof that the lumber and material remaining after the house had been demolished were sold for $100, and that amount had been offered to the plaintiff and refused. The city tendered that amount into court at the time of the trial.

The facts proved upon the trial are embraced in the conclusions filed by the trial judge. These show that in December, 1918,

the city of Texarkana, Tex., adopted the following ordinance:

"Sec. 1. That any building as described and defined hereinbelow shall be, and the same are, hereby declared to be a public nuisance.

"(a) Any building with roof, ceiling, floors, sills and foundations rotten or decayed and falling apart, windows out, uninhabitable and untenantable, neglected and unsightly.

"(b) Any building in danger of falling and injuring the person or property of another.

"(c) Any building which is a fire menace, to wit, by being in a dilapidated condition as fully described in subdivision (a) and (b) hereof, and which has an accumulation of rubbish and trash which is likely to become a fire or set on fire in and around said buildings and endanger the property of others.

"(d) Any building which is in the condition or conditions described in subdivisions (a) and (b) and (c) which is damp and in an unsanitary condition, which is likely to create disease and sickness.

"Sec. 2. Upon complaint being made under oath by any reputable citizen, and filed with the city council, through the city secretary, complaining that a certain building is in any of the conditions or all of them defined in paragraph one (1) hereof, the city council will set a day not less than 10, nor more than 20 days distant, at which time a hearing will be had to determine the truth or falsity of the allegations of said complaint, and witnesses may be summoned, and shall testify as to the condition of the building complained of, and all matters alleged and complained of in the complaint.

"Sec. 3. When the date for hearing provided for in paragraph two (2) hereof is set, the owner of said building complained of shall be notified of the action of the city council at least 10 days before said date set for the hearing herein provided for, and shall be requested to appear and show cause why said building should not be adjudged a public nuisance and abated in accordance with the provisions of this ordinance. The owner of said building shall be entitled to appear in person, or by counsel or both, and shall be entitled to have witnesses summoned and examined in his behalf.

"Sec. 4. Notice shall be deemed sufficiently given if served upon the owner in person by a peace officer of the city of Texarkana, Texas; if the owner be a nonresident of the city of Texarkana, Texas, then such notice shall be deemed sufficient if given by mailing such notice by registered letter to the last-known address of the said owner, and the 10 days' time required herein for notice to be given shall commence to run one day after the posting of the letter herein provided for.

"Sec. 5. If after the hearing provided for in paragraph 2 the city council shall by a three-fifths vote declare that the said building complained of is a public nuisance, the city council shall order said nuisance abated, by ordering the same torn down under the supervision of the city engineer, who shall be authorized to sell the same after so torn down, to the highest bidder for cash, after advertising the sale for 10 days prior to said sale in some newspaper published in the city of Texarkana, Texas, and the proceeds of such sale shall go first to the satisfaction of the cost of tearing down, advertising, and selling said building, and the remainder, if any, will be paid to the owner of said building.

"Sec. 6. If after the hearing provided for, the complaint and the facts alleged therein are sustained, the owner of such building immediately appears before the city council, and agrees to put said building in a stable, satisfactory and sanitary condition within 30 days, then, and in that event, the city council may grant and allow such owner 30 days in which to do so, and after the expiration of the 30 days, the city council may hear proof as to whether said building has been placed in a stable, satisfactory and sanitary condition, and if it finds that said building has not, then the city council shall order the city engineer to have same torn down after 10 days from said second hearing."

On January 3, 1919, two citizens residing near the premises of the appellant filed a complaint charging that the house belonging to the appellant was in a dilapidated condition; that the roof, ceiling, floors, and foundation had rotted and decayed, were falling apart, the windows were out, and the building was untenantable and in danger of falling and injuring the person and property of one of the complainants. It was also alleged that the building was in an unsanitary condition, and a fire menace by reason of the accumulation of rubbish inside and around it. Upon the filing of that complaint a written notice was mailed to the appellant, who was at the time a married woman, living with her husband at Fort Worth, Tex.

It is conceded that in the hearing and condemnation proceedings which followed this ordinance was complied with in all material respects. The notice was mailed to the appellant alone, her husband not being joined. She was at the time absent from Fort Worth, on a visit to relatives in the state of Alabama. The letter containing the notice was forwarded to her, but did not reach her until after January 19, and less than 10 days before the date of the hearing. On the date named, and in the absence of the appellant, or any one acting for her, the city council, after hearing evidence regarding the condition of the building, passed an order directing that it be "abated or torn down." Before the building was destroyed the appellant requested and secured a postponement of the execution of the order condemning the property. But she failed to make the required repairs. The material remaining after the destruction of the building was sold by the city for $100.

Among the conclusions filed by the trial court is the following:

"I find that the evidence on the trial of this case upon the question of the condition of said house and whether or not it constituted a nuisance was sharply conflicting (but sufficient to warrant the judgment of the city council), and

should have been submitted to the jury as requested by plaintiff's counsel in argument but for the conclusion of the court, as a matter of law, that the hearing before the city council and its judgment condemning said property was res adjudicata and conclusive and binding on this court."

Acting upon that conclusion, the trial court treated as immaterial the finding of the jury upon the issue of value, and rendered judgment in favor of the plaintiff for only $100.

Among the several assignments of error is one which assails the correctness of the court's holding that in a proceeding of this character the judgment of the city council was a final adjudication of the issues before it and precluded any further inquiry into the question: Was the building in fact a nuisance at the time it was condemned? In the view we take of the case a determination of that question settles all others involved in this appeal.

The special charter by which the city is governed does not confer upon the city council any general power to define and abate nuisances. In the subdivision containing the grant of police powers authority is given to regulate and prohibit particular things which affect the public health and create conditions favorable to the spread of fire. Among those provisions is the following:

"To declare all dilapidated buildings in said city to be nuisances and to direct the same to be repaired, removed or abated in such manner as shall be prescribed by said council."

That provision is relied on for authority to enact the ordinance previously quoted and to organize the council into a judicial tribunal to finally determine whether or not any building complained of as dilapidated is in fact a nuisance.

[2] When the abatement of a nuisance involves the destruction of private property, the owner cannot be deprived of the right to have the issue of nuisance vel non determined by some tribunal empowered by law to pass upon such questions. Under a charter provision which merely authorizes a municipal corporation to abate nuisances, it has no power to declare that a nuisance which is not such in fact. The naked right to abate something as a nuisance does not carry with it the power to judicially determine whether or not the thing complained of is a nuisance. Any party, whether a private individual, or a municipal corporation, or a public officer, who destroys private property upon the ground that it is a nuisance, proceeds at his peril, unless the thing destroyed has first been judicially condemned as a nuisance. Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116; City of Forney v. Mounger (Tex. Civ. App.) 210 S. W. 240; Harmison v. City of Lewistown, 153 Ill. 313, 38 N. E. 628, 46 Am. St. Rep. 893; Walker

v. Jameson, 140 Ind. 591, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 683, 49 Am. St. Rep. 222; Mayor, etc., v. Mulligan, 95 Ga. 323, 22 S. E. 621; 29 L. R. A. 303, 51 Am. St. Rep. 86; Joyce on Nuisances, §§ 347–349.

[3] Section 19 of article 1 of the Bill of Rights provides, among other things, that no citizen shall be deprived of his property except by due course of the law of the land. The argument is made by counsel for the city that the proceedings provided for in the ordinance here relied on furnish all the judicial machinery required by the above constitutional provision. It is true that in those proceedings a complaint was filed alleging the existence of conditions which might constitute a nuisance. It is also true that notice was given, and an opportunity to be heard was accorded to the owner of the property, and that after hearing evidence tending to show that the property was a nuisance the city council rendered its judgment of condemnation. But the further question arises: Did the city council have the power to exercise such judicial functions? On page 432 of his work on Constitutional Limitations Judge Cooley says:

"By the law of the land is most clearly intended the general law; a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his liberty, life, property, and immunities under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not, therefore, to be considered the law of the land."

See, also, Armstrong v. Traylor, 87 Tex. 598, 30 S. W. 440; Wichita Elec. Co. v. Hinckley et al. (Tex. Civ. App.) 131 S. W. 1192.

The fact that the city ordinance previously quoted authorized the council to sit as a court of inquiry and pass upon the issues of fact in the condemnation of dilapidated buildings as nuisances adds nothing to the powers of the council in such proceedings. The council could not enlarge its own powers merely by its own enactments. The authority to create judicial tribunals, in addition to those provided for in the Constitution, empowered to determine such issues as those here involved, rests exclusively with the Legislature. Article 5, § 1, Constitution. That the Legislature cannot delegate that power to city councils and other subordinate bodies is now too well settled to require the citation of authorities. Cooley on Constitutional Limitations (7th Ed.) 163.

[4] While the Legislature might have endowed the city council of Texarkana with authority which the latter undertook to exercise in this instance, the language of the special act granting the charter indicates no such intent. A fair construction of the language there used imports the grant of

only the legislative and ministerial powers essential to the protection of the public from those conditions which actually menace the health and safety of the community. That the charter does not itself provide the machinery required to constitute a judicial tribunal to determine such questions is too clear for argument. That it did not undertake to delegate the power to organize such a court will not be indulged, because it should not be assumed, in the absence of a clearly expressed intent, that the Legislature undertook to do what it had no constitutional right to do.

As supporting the judgment rendered in the court below counsel for appellee refer to the case of Crossman v. City of Galveston (Tex. Civ. App.) 204 S. W. 128. The facts of that case are strikingly similar to those involved in this, and the legal conclusion of the Court of Civil Appeals there expressed is not in accord with that announced by us in this case. That case, however, was decided mainly upon the authority of Stockwell v. State (Tex. Civ. App.) 203 S. W. 109, which was reversed by the Supreme Court. See Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116. It is but fair to say that at the time Crossman v. City of Galveston was decided the decision of the Supreme Court referred to had not been rendered.

[5] It is not our purpose to hold that the ordinance under which the appellant's property was condemned and demolished is void, but that the judgment of the city council rendered upon the hearing held is not conclusive upon the issue of nuisance in subsequent judicial proceedings for damages. The ordinance is apparently framed with a view of preventing the unnecessary destruction of private property, and as such may be a commendable exercise of the police powers of the city. We are therefore of the opinion that the issue of nuisance and the value of the property remaining after the building had been demolished involved questions of fact which should have been submitted to the jury in the trial below.

The judgment will therefore be reversed, and the cause remanded for another trial.

---

⚙➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes